UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY,<br><br>      Plaintiff,<br> v.<br><br>RAZORHONE, LLC,<br><br>      Defendant. | CASE NO. 2:23-cv-01904-TL<br><br>ORDER ON SUMMARY JUDGMENT |

This is an action for declaratory judgment regarding an insurer's duty to defend and duty to indemnify its insured in an underlying state lawsuit. The insurer is Plaintiff Mesa Underwriters Specialty Insurance Company ("Mesa"); the insured is Defendant Razorhone, LLC ("Razorhone"). This matter is before the Court on Mesa's Motion for Summary Judgment. Dkt. No. 19. Having reviewed Razorhone's response (Dkt. No. 23), Mesa's reply (Dkt. No. 25), the Parties' supplemental briefing (Dkt. Nos. 27, 30), and the relevant record, the Court DENIES Mesa's motion.

I.       BACKGROUND

A.     The Underlying Lawsuit

The underlying lawsuit is a dispute over stormwater drainage on "Semiahmoo," a real-estate development located in the northwesternmost corner of Washington state. *See* Dkt. No. 21-1 ("First Amended Complaint"). In that case, No. 22-2-01543-37 in Whatcom County Superior Court, plaintiffs SMRR Holdings, Inc., and V. Barrett Denney, Trustee of the V. Barrett Denney Revocable Trust (collectively, "Denney"), filed a civil action seeking damages and injunctive relief against defendants Semiahmoo Resort Association, the City of Blaine, Washington, and Razorhone, LLC. *Id.* ¶¶ 1.1–1.5. Neither the plaintiffs in the underlying state-court case, nor the City of Blaine or Semiahmoo Resort Association, is a party to the instant matter pending before this Court. Underlying defendant Razorhone, however, is insured by Plaintiff Mesa and is the Defendant against whom Mesa seeks declaratory judgment here in federal court. Razorhone "is the owner and developer of 'Sea Smoke,' a new planned unit development at Semiahmoo." *Id.* ¶ 1.5.

The underlying lawsuit concerns property damage sustained by two residences situated on lots "located on a waterside bluff overlooking Semiahmoo Bay, Boundary Bay, and the Strait of Georgia within an exclusive gated community" in or near Blaine, Washington. *Id.* ¶¶ 3.1–3.3. Denney alleges "massive flooding on [the] Properties on multiple occasions resulting in the erosion of [the] lots and placing [the] Residences at imminent risk." *Id.* ¶ 3.3. The underlying complaint alleges that Denney is "entitled to **substantial monetary damages** arising from the resulting damage to [the] Properties and Residences including repair and remediation expenses that are ongoing." *Id.* ¶ 3.3.1 (boldface in original). With respect to Razorhone specifically, Denney alleges that Razorhone's "clear cutting of trees required to develop Sea Smoke has worsened the flooding issues experienced by [Denney]. The Sea Smoke site was previously

undeveloped and covered by a mature, second growth forest. Clear cutting this forest has significantly increased surface water runoff." *Id.* ¶ 3.7.1.

The underlying complaint brings four causes of action against Razorhone. First, Denney alleges negligence, particularly that "Razorhone has breached the duties it owes to [Denney] by clear cutting the forest at the Sea Smoke site without an adequate drainage plan for the stormwater runoff." *Id.* ¶ 6.4. Second, Denney alleges that "Razorhone has committed statutory trespass as a result of its improper and wrongful discharge of stormwater into the [Semiahmoo Resort Association] drainage system and onto [Denney's] properties. *Id.* ¶ 8.4. Third, Denney alleges common-law trespass, based on the discharge of stormwater. *Id.* ¶ 9.2. Fourth, Denney alleges nuisance. *Id.* ¶ 10.4.

**B.    The Insurance Policy**

Between 2019 and 2023, Mesa issued to Razorhone five consecutive year-long insurance policies ("the Policies"). *See* Dkt. Nos. 21-2, 21-3, 21-4, 21-5, 21-6 (policies). These Policies provided continuous coverage from April 10, 2019, to April 10, 2024. *See id.* Mesa asserts that the "the relevant provisions of the five policies are substantially similar, if not identical" (Dkt. No. 19 at 2), and Razorhone does not dispute this assertion (*see generally* Dkt. No. 23). The Policies include the following Insuring Agreement, which states in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

      **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

[ . . . ]

      **b.**    This insurance applies to "bodily injury" and "property damage" only if:

          **(1)**    The "bodily injury or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

          **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

          **(3)**    Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

      **c.**    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

      **d.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. Of Section II – Who

ORDER ON SUMMARY JUDGMENT - 4

      Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

 [ . . . ]

   **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 [ . . . ]

**SECTION V – DEFINITIONS**

 [ . . . ]

  **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

 [ . . . ]

  **17.** "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

 [ . . . ]

  **18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.

Dkt. No. 21-2 at 28, 40, 42–43; Dkt. No. 21-3 at 27, 39, 41–42; Dkt. No. 21-4 at 27, 39, 41–42; Dkt. No. 21-5 at 27, 39, 41–42; Dkt. No. 21-6 at 26, 38, 40–41 (boldface in original).

Relevant to the disposition of this motion, the 2019–20, 2020–21, 2021–22, and 2022–23 Policies included a "New Residential Construction Exclusion":

> The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**
>
> This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" caused by or arising out of work or operations performed by any "insured" or any contractor(s) or subcontractor(s) working directly or indirectly on behalf of any "insured" in connection with the new residential construction of the following:
>
> A.  Condominium or cooperative unit;
> B.  Town house; or
> C.  Single family house
>
> New residential construction includes the conversion of an existing structure or structures to condominium or cooperative building(s) or complex(es).

Dkt. No. 21-2 at 26; Dkt. No. 21-3 at 25; Dkt. No. 21-4 at 25; Dkt. No. 21-5 at 25 (boldface in original).

The 2022–23 and 2023–24 Policies included a "Real Estate Development Property Exclusion":

> This insurance does not apply to "bodily injury," "property damage," "personal and advertising injury" or "medical expense" arising out of, caused by, or in any way connected with: Real Estate Development Property, meaning which includes site preparation as well as actual construction activities.

Dkt. No. 21-5 at 13; Dkt. No. 21-6 at 16.

**C.     Procedural History**

On December 12, 2023, Mesa filed this declaratory-judgment lawsuit seeking a determination of coverage for any claims arising out of the underlying lawsuit. *See* Dkt. No. 1. In a Joint Status Report submitted on April 12, 2024, Mesa asserted that the issue of duty-to-defend

could be resolved as a matter of law on summary judgment and advised the Court of its intention to file an early motion for summary judgment. *See* Dkt. No. 15 at 4. Both Parties acknowledged that, should the Court find a duty to defend on summary judgment, the case should be stayed. *See* Dkt. No. 16. On July 31, 2024, Mesa filed the instant motion for summary judgment. Dkt. No. 19. Razorhone responded (Dkt. No. 21), and Mesa replied (Dkt. No. 25). On December 13, 2024, the Court submitted additional questions to the Parties and requested supplemental briefing on several discrete issues. Dkt. No. 26. On December 23, 2024, both Parties submitted supplemental briefing. Dkt. Nos. 27, 30.

## II.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The court must draw all justifiable inferences in favor of the non-movant. *Id.* at 255. The court does not make credibility determinations or weigh evidence at this stage. *Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("[W]here the facts specifically averred by [the non-moving] party contradict facts specifically averred by the movant, the [summary judgment] motion must be denied.").

1  If the non-movant bears the burden of proof at trial, the movant only needs to show an
2  absence of evidence to support the non-movant's case. *In re Oracle Corp. Sec. Litig.*, 623 F.3d
3  376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once such a
4  showing is made, the burden shifts to the non-movant to show more than the mere existence of a
5  scintilla of evidence in support of its case—the party must show sufficient evidence that a jury
6  could reasonably find for the non-movant. *Id.* (citing *Anderson*, 477 U.S. at 252). Even if the
7  non-movant does not have the burden of proof at trial, it must nonetheless show that a genuine
8  issue of material fact exists by presenting evidence in its favor. *F.T.C. v. Stefanchik*, 559 F.3d
9  924, 929–30 (9th Cir. 2009) (affirming summary judgment for plaintiff where defendants failed
10 to show significantly probative evidence to dispute plaintiff's evidence).

11 In short, the Federal Rules of Civil Procedure "mandate[] the entry of summary
12 judgment, after adequate time for discovery and upon motion, against a party who fails to make a
13 showing sufficient to establish the existence of an element essential to that party's case, and on
14 which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322 (citing
15 Fed. R. Civ. P. 56(c)).

16 **B.   Duty to Defend**

17 Washington insurance law governs the substance of this case. "The insurer's duty to
18 defend is separate from, and substantially broader than, its duty to indemnify." *Nat'l Sur. Corp.*
19 *v. Immunex Corp.*, 176 Wn.2d 872, 878, 297 P.3d 688 (2013) (citing *Truck Ins. Exch. v. VanPort*
20 *Homes, Inc.*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002)). The duty to defend "generally is
21 determined from the 'eight corners' of the insurance contract and the underlying complaint."
22 *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 803, 329 P.3d 59 (2014). The duty "arises
23 when a complaint against the insured, construed liberally, alleges facts which could, if proven,
24 impose liability upon the insured within the policy's coverage." *Id.* (quoting *Truck Ins. Exch.*,

147 Wn.2d at 760); *accord Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52–53, 164 P.3d 454 (2007). "An insurer is not relieved of its duty to defend unless the claim alleged in the complaint is 'clearly not covered by the policy.'" *Woo*, 161 Wn.2d at 53 (quoting *Truck Ins. Exch.*, 147 Wn.2d at 760). "[I]f a complaint is ambiguous, a court will construe it liberally in favor of 'triggering the insurer's duty to defend.'" *Id.* (quoting *Truck Ins. Exch.*, 147 Wn.2d at 760); *see also Immunex*, 176 Wn.2d at 880 ("[I]f there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." (quoting *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 405, 229 P.3d 693 (2010))). "In sum, the duty to defend is triggered if the insurance policy *conceivably covers* the allegations in the complaint . . . ." *Woo*, 161 Wn.2d at 53 (emphasis in original).

"There are two exceptions to the rule that the duty to defend must be determined only from the complaint, and both the exceptions favor the insured." *Id.* (quoting *Truck Ins. Exch.*, 147 Wn.2d at 761). "First, if it is not clear from the face of the complaint that the policy provides coverage, but coverage could exist, the insurer must investigate and give the insured the benefit of the doubt that the insurer has a duty to defend." *Id.* (citing *Truck Ins. Exch.*, 147 Wn.2d at 761). The insurer has the burden "to determine if there are *any* facts in the pleadings that could conceivably give rise to a duty to defend." *Id.* at 53–54 (emphasis in original) (citing *R.A. Hanson Co. v. Aetna Ins. Co.*, 26 Wn. App. 290, 294, 612 P.2d 456 (1980)). "Second, if the allegations in the complaint 'conflict with facts known to or readily ascertainable by the insurer,' or if 'the allegations . . . are ambiguous or inadequate,' facts outside the complaint may be considered." *Id.* at 54 (quoting *Trick Ins. Exch.*, 147 Wn.2d at 761). "The insurer may not rely on facts extrinsic to the complaint to deny the duty to defend—it may only do so to trigger the duty." *Id.* (citing *Truck Ins. Exch.*, 147 Wn.2d at 761).

Finally, "[w]hen interpreting an insurance policy, [a court] give[s] the language its plain meaning, construing the policy as the average person purchasing insurance would." *Robbins v. Mason Cnty. Title Ins. Co.*, 195 Wn.2d 618, 626, 426 P.3d 430 (2020). "The Washington Supreme Court has consistently ruled that where the policy language is clear and unambiguous, it must be enforced as written." *Shepard v. Foremost Ins. Co., Inc.*, No. C08-434, 2009 WL 675093, at *6 (W.D. Wash. Mar. 11, 2009) (citing, *inter alia*, *Wash. Pub. Util. Dist. Utils. Sys. v. Pub. Util. Dist. No. 1 of Clallam Cnty.*, 112 Wn.2d 1, 771 P.2d 701 (1989)).

### III. DISCUSSION

**A.   Which Policy Applies**

Although "the relevant provisions of the five Policies are substantially similar, if not identical" (Dkt. No. 19 at 2), they do not all include the same exclusions. *See generally* Dkt. Nos. 21-2, 21-3, 21-4, 21-5, 21-6. Specifically, only the 2019–20, 2020–21, 2021–22, and 2022–23 Policies include the New Residential Construction Exclusion (*see* Dkt. No. 21-2 at 26; Dkt. No. 21-3 at 25; Dkt. No. 21-4 at 25; Dkt. No. 21-5 at 25), and only the 2022–23 and 2023–24 Policies include the Real Estate Development Exclusion (*see* Dkt. No. 21-5 at 13; Dkt. No. 21-6 at 16). The 2022–23 Policy contains both exclusions. Therefore, the Court must first determine which Policy (or Policies) applies to the property damage alleged in the underlying lawsuit.

The underlying complaint does not provide a clear answer to this question, but two paragraphs provide some guidance. First, Denney alleges that, "Following significant rain in 2020 and 2021, SRA's attempts to clear blockages from catch basins near [Denney's] Properties failed spectacularly leading to significant flooding and additional damage to [Denney's] Property and Residence." Dkt. No. 21-1 ¶ 3.5.6. Second, Denney alleges that Razorhone's "clear cutting of trees required to develop Sea Smoke has worsened the flooding issues experienced by

1  [Denney]." *Id.* ¶ 3.7.1. These allegations point to the applicability of the 2019–20, 2020–21,

2  and/or 2021–22 Policies.

3        For their part, the Parties also agree that the latter two Policies do not apply. Razorhone

4  asserts, "The Underlying Plaintiffs have not alleged sustaining any property damage caused by

5  an occurrence during the policy periods for the 2022[–23] or 2023[–24] policies." Dkt. No. 27 at

6  2. In support of this assertion, Razorhone refers to an underlying plaintiff's deposition testimony

7  that "no flooding events occurred after November of 2021." *Id.* at 4. Mesa acknowledges

8  Razorhone's position that the 2022–23 and 2023–24 Polices are not relevant to the underlying

9  lawsuit and concedes that "the sole issue before [this] Court is whether the New Residential

10 Construction exclusion applies to preclude coverage for the Underlying Lawsuit." Dkt. No. 30 at

11 2–3.

12       The Court thus concludes that one or more of the 2019–20, 2020–21, or 2021–22 Policies

13 applies to the property damage at issue in the underlying lawsuit. Because these three Policies

14 are substantially identical and contain the same exclusions, the Court need not be more definite

15 at this point.

16 **B.**    **Duty to Defend**

17       There is only one exclusion that could relieve Mesa of its duty to defend: the New

18 Residential Construction Exclusion, as applicable to the 2019–20, 2020–21, and 2021–22

19 Policies. The Exclusion is concerned with damage caused by or arising out of construction work,

20 but only construction work performed for a specifically defined purpose—namely, "work or

21 operations performed . . . in connection with [ ] new residential construction." Dkt. No. 21-2 at

22 26; Dkt. No. 21-3 at 25; Dkt. No. 21-4 at 25. The question before the Court, therefore, is a simple

23 one: *Why did Razorhone cut down those trees?*

24

Stated differently, if the clearcutting complained of in the underlying complaint was performed "in connection with . . . new residential construction," then the New Residential Construction Exclusion applies, Razorhone is not insured, and Mesa has no duty to defend or indemnify. But if the clearcutting was performed for some other purpose, then the exclusion does not apply, Razorhone *is* insured, and Mesa is obligated to defend (and potentially indemnify) Razorhone in the underlying state-court matter.

So, *Why did Razorhone cut down those trees?* To answer this question, Mesa urges the Court to consider Sea Smoke as a single unit. Mesa's position is that, even though Razorhone intends for Sea Smoke to include nonresidential development, the inclusion of *any* residential construction within the developer's plans makes it appropriate to characterize *all* construction (or activities performed in preparation for construction) within the property as residential. *See* Dkt. No. 19 at 13.

Mesa argues, "The clearcutting of the Sea Smoke property, including any portion used or to be used for maintenance or commercial use, is related to or associated with the Sea Smoke planned unit development." Dkt. No. 30 at 5. Mesa predicates its argument by referencing two documents: (1) the Blaine City Council's "findings of fact and conditions of approval for the project"; and (2) the National Association of Realtors' ("NAR") definition of "planned unit development." Dkt. No. 19 at 13. As determined by the City Council, Sea Smoke is a "planned unit development" that "is a mixed-use development containing[:] detached single family residential and attached single family residential housing, multi-family housing in a mixed use commercial/residential building(s), a personal storage facility, a public or private park, open space, private roads, infrastructure and other appurtenant facilities." Dkt. No. 19 at 13 (quoting Dkt. No. 20 at 7 ("Ordinance No. 18-2916 Findings of Fact")). And according to NAR, a planned unit development is "a group of single-family homes, condos, or townhouses where all

the homeowners belong to a homeowners association." *Id.* (quoting NAR website). Put another way, construction in Sea Smoke, Mesa argues, is necessarily new residential construction, because, upon its conception on paper and approval by the City Council as a planned unit development, residential housing was encoded in Sea Smoke's DNA. *See id.*

But although Mesa makes a cogent point, it is improperly utilized here, in an argument presented in opposition to a duty to defend. This is because Mesa cannot cite extrinsic evidence—*i.e.*, the Blaine City Council findings and NAR definition—to deny its duty to defend. "The insurer may not rely on facts extrinsic to the complaint to deny the duty to defend—it may only do so to trigger the duty." *Woo*, 161 Wn.2d at 53; *see Truck Ins. Exch.*, 147 Wn.2d at 761. Mesa has marshalled the City Council and NAR evidence to deny its duty to defend, and the Court will therefore not consider it for that purpose here. *See Homesite Ins. Co. of the Midwest v. Howell*, 709 F. Supp. 3d 1277, 1290 (W.D. Wash. 2023) ("[T]he Court may not use the extrinsic evidence cited by Homesite as evidence that it owes no duty to defend."); *Costco Wholesale Corp. v. United Nat'l Ins. Co.*, No. C09-470, 2010 WL 11527272, at *3 (W.D. Wash. Mar. 25, 2010) (refusing to consider settlement agreement, which "f[ell] outside the four corners of the complaint," when evaluating insurer's duty to defend).

Mesa cites one case in this District, *State Farm v. Doucette*, for the proposition that "courts do evaluate evidence outside of the pleadings to assess where there is a duty to defend." Dkt. No. 19 at 10 (citing *State Farm Fire & Cas. Co. v. Doucette*, No. C16-5169, 2016 WL 4793294, at *3 (W.D. Wash. Sept. 14, 2016)). The *Doucette* court distinguished between an *insurer's* use of extrinsic evidence to deny a duty to defend, which is plainly not allowed in Washington, and *a court's* use of extrinsic evidence to do the same. *Doucette*, 2016 WL 4793294, at *3. But the Court declines to follow *Doucette* here. For one thing, *Doucette* appears to be an outlier on this issue. In an overwhelming majority of cases, courts in this District have

ORDER ON SUMMARY JUDGMENT - 13

deemed it contrary to Washington law to use extrinsic evidence to deny an insurer's duty to defend. *See, e.g.*, *Howell*, 709 F. Supp. 3d at 1290; *Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*, No. C21-1344, 2023 WL 7169406, at *6 (W.D. Wash. July 20, 2023); *Sec. Nat'l Ins. Co. v. Urberg*, No. C21-1287, 2023 WL 2307565, at *4 (W.D. Wash. Mar. 1, 2023); *2FL Enters, LLC v. Hous. Specialty Ins. Co.*, No. C17-676, 2018 WL 706406, at *4 (W.D. Wash. Feb. 5, 2018). For another, the court in *Doucette* ultimately found that the insurer in that case *did* have a duty to defend. *Doucette*, 2016 WL 4793294, at *5. Given the court's conclusion, it is accurate to say that it did not consider extrinsic evidence to deny a duty to defend, because, at the end of the day, the court's order did not actually deny the insurer's duty to defend.

Unlike Mesa, Razorhone prefers a segmented view of Sea Smoke, which considers that some parcels of Sea Smoke have been committed to residential development, while other parcels have not. Razorhone asserts that the clearcutting at issue in the underlying lawsuit arises completely out of the latter: "[C]lear cutting occurred on Tracts A and J of [Sea Smoke] and was completely unrelated to any new residential construction. . . . Tract A-1's designated use is future commercial development." Dkt. No. 23 at 12. Tract A-2 was "sold to Semiahmoo Resort Association," and "[a]ny work Razorhone caused to be performed on Tract A-2 was required by the sale agreement with SRA and not to serve any portion of Sea Smoke." Dkt. No. 27 at 2. Tract J contains a stormwater pond that "only serves Tract A-2 and was constructed for the sale of Tract A-2 to SRA." *Id.*

For its part, the underlying complaint is indefinite. The complaint appears to refer to Sea Smoke as an undivided unit, alleging:

> **Sea Smoke Clear Cutting Exacerbates Issues.** The clear cutting of trees required to develop Sea Smoke has worsened the flooding issues experienced by [Denney]. The Sea Smoke site was previously undeveloped and covered by a mature, second growth

>forest. Clear cutting this forest has significantly increased surface water runoff.

Dkt. No. 21-1 ¶ 3.7.1 (boldface in original). Mesa asserts that this language demonstrates that the underlying plaintiffs share its view that Sea Smoke is indivisible, and that the clearcutting was therefore performed in the service of new residential construction. *See* Dkt. No. 19 at 12–13. The Court disagrees. First, the underlying complaint makes reference to a "future Sea Smoke Tract A Project," which makes clear that the underlying plaintiffs understood Sea Smoke to be something other than a single homogeneous tract of development. Dkt. No. 21-1 ¶ 3.6.2. Second, a fair reading of the underlying complaint finds its primary concern to be flood damage that might or might not have been exacerbated by Razorhone's clearcutting. *See* Dkt. No. 21-1 ¶ 3.7.1. It is silent as to whether the clearcutting was specifically performed to make way for residential or nonresidential development. As the Court reads the underlying complaint, such a distinction is immaterial to the state court's consideration of the causation and scope of Denney's alleged damage. Therefore, the Court declines to adopt Mesa's presumption that the underlying complaint clearly contemplates damage associated with new residential construction.

Neither Party provides, and the Court cannot locate, any Washington case law on point with respect to the "unified vs. segmented" approach as to how a court should characterize construction performed on a subsection of a mixed-use development for the purpose of determining whether an exclusion applies. But at summary judgment, the Court need not extrapolate the law into this lacuna. Where such a gap in authority exists, the Court is bound to construe the insurance contract in favor of the insured. *See Robbins*, 195 Wn.2d at 634–35 ("[U]ncertainty in the law must be construed in favor of the insured and coverage under the policy agreement."). To be clear, the Court does not find that the language of the policy exclusion at issue here is ambiguous. Rather, the Court concludes only that neither the

Washington Supreme Court nor Washington Court of Appeals has ruled on this particular issue, and where there is legal uncertainty, the decision should be in favor of the insured. *See Am. Best Food, Inc.*, 168 Wn.2d at 408 ("The lack of any Washington case directly on point . . . presented a legal uncertainty with regard to [the insurer's] duty . . . [, and] any uncertainty works in favor of providing a defense to an insured.").

Moreover, the Court finds Mesa's position to be less logically tenable than that of Razorhone. Under Mesa's reasoning, if a home is planned on a parcel of land on one side of a large development, then the hypothetical erection of a strip mall—clearly a commercial endeavor—on a parcel on the opposite side of the development would be *residential* construction, irrespective of how distant the two parcels are from one another, or how much time elapses between the construction of the two buildings.[1] This is ultimately a matter for Washington state courts to adjudicate, but the Court finds this hypothetical instructive and indicative of a flaw in Mesa's argument.

In sum, the Court finds that the Razorhone's insurance policy with Mesa could "conceivably" cover the injuries alleged in the underlying complaint, and Mesa cannot be relieved of its duty to defend. *See Woo*, 161 Wn.2d at 53. Therefore, the Court DENIES Mesa's motion for summary judgment as to its duty to defend.

**C.     Duty to Indemnify**

On April 12, 2024, the Parties agreed that, if Mesa had a duty to defend in the underlying lawsuit, then this case should be stayed until the underlying complaint is resolved. *See* Dkt. No. 15 at 5–6 (Joint Status Report). But in denying Mesa's motion for summary judgment here, this

---

[1] Not to mention whether the construction on the opposite side of the development could, or actually does, affect the home on the other side.

1  Order does not, as a matter of law, conclude that Mesa has a duty to defend.[2] Still, the Court

2  credits Razorhone's argument that "[t]he Court's ruling on the duty to indemnify is appropriate

3  when actual liability is determined" in the underlying state-court action. Dkt. No. 23 at 15. Mesa

4  does not refute Razorhone's assertion (*see generally* Dkt. No. 25) and instead relies on the oft-

5  cited legal conclusion that, "If there is no duty to defend, then there is no duty to indemnify."

6  Dkt. No. 19 at 14; *see, e.g.*, *Northfield Ins. Co. v. Yates, Wood, & MacDonald, Inc.*, No. C24-

7  441, 2024 WL 4950137, at *5 (W.D. Wash. Dec. 3, 2024); *Am. Strategic Ins. Corp. v. Jackson*,

8  No. C23-5461, 2024 WL 358265, at *7 (W.D. Wash. Jan. 31, 2024); *Rush Residential, Inc. v.*

9  *Phila. Ins. Cos.*, No. C21-5350, 2023 WL 6846543, at *5 (W.D. Wash. Oct. 17, 2023). Mesa

10 asserts it has no duty to defend and therefore cannot have a duty to indemnify. *See* Dkt. No. 19 at

11 14–15.

12     The circumstances here are similar, but not identical, to those contemplated in the

13 Parties' April 12, 2024, Joint Status Report. Therefore, given the Court's denial of Mesa's

14 motion for summary judgment, and the subsequent lack of a definitive determination on Mesa's

15 duty to defend, the Court ORDERS the Parties to meet and confer, then file a joint submission

16 indicating the Parties' positions on whether the Court should stay this case.

17 //

18 //

19 //

---

[2] Mesa asserted it was moving for early summary judgment because the issue could be resolved as a matter of law on summary judgment. *See* Dkt. No. 15 at 4. Yet Mesa also claims the New Residential Construction Exclusion applies because, "By Underlying Plaintiffs' own allegations, the removal of trees was necessary for the construction of a group of homes." Dkt. No. 25 at 6. But this is a *factual* assertion that Razorhone strongly disputes (*see* Dkt. No. 22 at 8), and the language of the underlying complaint is not nearly as clear as Mesa suggests. Before the Court could apply the exclusion as a matter of law as Mesa expects, it would need to either: (1) construe the underlying complaint as straightforwardly as Mesa does; or (2) make a factual finding on the hotly disputed issue of whether Razorhone's clearcutting constituted new residential construction. The ambiguity of the underlying complaint stifles the former, and the Court's limited authority on summary judgment precludes the latter.

ORDER ON SUMMARY JUDGMENT - 17

## IV.  CONCLUSION

Therefore, the Court ORDERS:

(1) Plaintiff's Motion for Summary Judgment (Dkt. No. 19) is DENIED.

(2) The Parties SHALL file a joint submission as to their respective positions regarding a stay in this matter **no later than January 28, 2025.**

Dated this 7th day of January 2025.

_____
Tana Lin
United States District Judge